UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFF BONOMO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 4:19-cv-03394-SEP |
| | ) |
| THE BOEING COMPANY, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Boeing's Motion for Summary Judgment, Doc. [32], on both counts of Bonomo's Complaint. For the reasons set forth below, the Motion is granted.

### FACTS AND BACKGROUND[1]

The core issue in this case is whether Boeing engaged in age discrimination and retaliation when it did not hire Bonomo for a management position in 2018, but both parties' positions rely on facts about Boeing's interview process and prior employment actions.

### I. Boeing's Management Interview Process

Under Boeing's hiring policies, when a management position is vacant, a hiring manager can post the position, allowing employees to apply, and those applicants considered to be most qualified receive a "structured interview." Doc. [39] ¶ 5. The structured interview is conducted by a panel of interviewers that must include a hiring manager and either a non-hiring manager or an HR employee. *Id.* ¶ 7. In the interview, the panel asks each candidate the same standardized questions, generally inquiring into specific workplace scenarios the candidate has faced, the actions the candidate took to address those scenarios, and the results achieved. *Id.* ¶¶ 6, 8. Each panelist notes and scores each candidate's answers on a scale of one to five, with five representing the best answer. *Id.* ¶ 9. After the interviews, the panelists discuss how they scored each candidate's responses and agree on a "consensus score" for each candidate's answers. *Id.* ¶ 10. Once the panelists decide the consensus scores, the hiring manager selects the job offeree. *Id.* ¶ 11.

---

[1] Except as otherwise noted, the facts in this section are not disputed.

## II.   The 2017 Opening, Interview, and EEO Complaint

In 2017, Bonomo, age 62 and serving as a Level K manager at Boeing, applied for a newly-created Level M Flight Ramp manager position (the 2017 opening).[2] Docs. [39] ¶¶ 1, 3, 13, [42] ¶ 5, [40-2]. Aaron Boswell and Daniel Oetjen were also among the applicants for the 2017 opening, although Oetjen was not interviewed. Doc. [42] ¶¶ 9, 12. John Harig, age 53 and Director of Boeing's F-18 Program, was the hiring manager for the 2017 opening, and the other interview panelists were Randy Illum, age 55 and the acting director of the F-15 Program, John Mueller, age 56 and a F-18 Level M Flight Ramp manager, and Cathy Buehrle, age 57 and a Human Resources Generalist, Doc. [39] ¶¶ 14, 15. Bonomo had never worked with either Harig or Illum, *id.* ¶ 16, and when Bonomo applied without submitting a resume, *id* ¶ 19, Buehrle notified Bonomo, who responded: "Cathy, I have worked for Boeing for over 30 years. I didn't think a resume would say anything more than my work history already says." *Id.* ¶ 20.

Bonomo was interviewed for the 2017 opening on June 1, 2017. Doc. [39] ¶ 21. Bonomo admits that, even though he knew that he would be asked situational questions, he did not go to the interview prepared with any workplace scenarios in mind. *Id.* ¶ 22. No panelist made any age-related comments. *Id.* ¶ 24. When Bonomo left the interview, he felt discouraged, thinking that he had performed poorly. *Id.* ¶ 23.

Bonomo's hunch was borne out by the ratings he received from the panelists. Buehrle, Illum, Mueller, and Harig individually scored Bonomo at 18, 18.5, 27, and 18.5, respectively, while Aaron Boswell, another interviewee who was 33 years old, received 23.5, 28.5, 29, and 25.5, respectively. *Id.* ¶¶ 26-29. Bonomo's consensus score was a 19, the lowest of the five interviewees, while Boswell received a 28.5, the highest score. *Id.* ¶ 30. The hiring panel selected Boswell for the 2017 opening. *Id.* ¶ 25.

Commenting on his interview performance, Buehrle thought Bonomo did not give much detail in response to the situational questions and instead assumed the panel knew him and that he would receive the job regardless of how he interviewed. *Id.* ¶ 31. Illum thought Bonomo did not fully answer some questions and that his answers communicated both arrogance and a sense of entitlement to the position. *Id.* ¶ 32. Mueller, who was Bonomo's supervisor from 2015 through 2017, *id.* ¶ 17, thought that both Bonomo and Boswell interviewed well, but he believed that Boswell's interview

---

[2] Boeing assigns letters to different levels of certain management positions, with letters later in the alphabet indicating a higher-level management position. Doc. [39] ¶ 2.

indicated that he would do a better job working with upper management, making strategic decisions, and strengthening operations under his leadership. *Id.* ¶ 33. Harig believed that someone hired for the Level M position needed the ability to inspire others as well as strong leadership and communication skills, and he thought Boswell was better qualified than Bonomo in those areas. *Id.* ¶ 34.

On July 9, 2017, and after his rejection for the 2017 opening, Bonomo submitted an age discrimination complaint to Boeing's EEO office. Doc. [39] ¶ 36. The investigator concluded that the hiring panelists did not discriminate against Bonomo because of his age when they rejected him for the 2017 Level M position. *Id.* ¶ 37.

### III.   The 2018 Opening & Interview

In September 2017, James Dewees joined Boeing's St. Louis office as the new Operations Executive Leader for the F-15 Program. Doc. [42] ¶ 17. At that time, Boeing had two Level M Flight Ramp manager positions, held by Aaron Boswell and John Mueller. *Id.* ¶ 18. Not long after Dewees arrived, Mueller left the F-18 Flight Ramp to work in the Final Assembly department. *Id.* ¶ 19. Dewees, in consultation with his superior, Chad Nicholas, decided to move Aaron Boswell from the F-15 Level M Flight Ramp position to the F-18 Level M Flight Ramp position. *Id.* ¶ 20. After Boswell's transfer, Dewees filled the F-15 Flight Ramp Level M interim vacancy with Daniel Oetjen, a Final Assembly department employee, without considering other potential candidates. *Id.* ¶¶ 23-25.

In the fall of 2018, Boeing posted a Level M senior manager opening for the F-15 Flight Ramp (the 2018 opening), and Bonomo applied again.[3] Docs. [39] ¶ 38, [42] ¶ 26. The 2018 opening required the same qualifications as the 2017 opening. Docs. [39] ¶ 39, [42] ¶ 27. Dewees was the hiring manager for the 2018 position. Doc. [39] ¶ 42. The other interviewers were Mark Sears, the Director of F-15 Saudi Arabia, and Amy Amin, the F-15 Production Engineering Senior Manager. Docs. [39] ¶ 44, [42] ¶ 31. Dewees personally selected Sears and Amin for the panel. Doc. [42] ¶ 30.

Bonomo was interviewed for the 2018 opening on December 4, 2018. Doc. [39] ¶ 47. Like the 2017 interview, Bonomo went to the 2018 interview without any specific workplace situations in mind. *Id.* ¶ 46. Bonomo thought he performed better in the 2018 interview than in past interviews, Doc. [42] ¶ 36, but Dewees selected Dan Oetjen, age 34, for the position. Docs. [39] ¶ 48, [42] ¶ 37. Oetjen began his career at Boeing in 2009 as an Assembly Mechanic on the F-15 program. Doc. [39] ¶ 57. After working about two years as an Assembly Mechanic, Oetjen assumed a similar role of

---

[3] From the record, it is unclear whether the 2018 position was posted on November 1, 2018, or in October 2018. *See* Docs. [39] ¶ 38, [42] ¶ 26. The discrepancy is immaterial for summary judgment purposes.

3

Prototype Mechanic on one of Boeing's secret projects. *Id.* ¶ 58. A year after becoming a Prototype Mechanic, Oetjen was promoted to Level K Manager on the F-15 Program, the same level as Bonomo, and while holding that position, Oetjen worked in various roles in that program. *Id.* ¶¶ 59-60. In 2014, Oetjen transitioned to the Flight Ramp, where he worked for about three-and-a-half years before moving to the Final Assembly department in either March or April 2017 to serve as lead Level K general foreman. *Id.* ¶¶ 60, 62. Oetjen held a master's degree when he applied for the 2018 position. *Id.* ¶ 65.

Amin, Sears, and Dewees rated Bonomo's answers in his 2018 interview as 20-22, 18, and 15-16, respectively, and gave him a consensus score of 17.5 *Id.* ¶¶ 49-52. Oetjen received a higher rating, as Amin, Sears, and Dewees gave him a score of 26-27, 25, and 27, respectively, with a consensus score of 25.5. *Id.* ¶¶ 49-52. Amin and Dewees thought Oetjen provided better answers because they explained specific situations, actions, and results that demonstrated why he would perform well as a Level M manager. *Id.* ¶ 53. Sears believed Oetjen interviewed better than Bonomo because Oetjen provided answers that demonstrated his leadership abilities, offered greater detail, and better conveyed that he had the communication style expected of a senior manager. *Id.* ¶ 54. Bonomo acknowledges that he is a poor interviewer. *Id.* ¶¶ 70-71.

On December 4, 2018, the day Oetjen was selected for the 2018 opening, Dewees completed the Selection Process Results Form. Doc. [42] ¶ 37. The form contains a section requesting the hiring manager to state the rationale supporting the hiring decision. *Id.* ¶ 40. Dewees left this section blank. *Id.* ¶ 41. On February 19, 2019, and March 4, 2019, Dewees received emails informing him that the rationale for the 2018 hiring decision was not indicated on the Selection Process Results Form and asking him to indicate the hiring rationale. *Id.* ¶¶ 42, 43. On March 7, 2019, Dewees responded, stating that Oetjen was hired because he "interviewed the best of all the candidates interviewed." *Id.* ¶ 44; *see also* Doc. [42] ¶ 38 (asserting, undisputed, that "[t]he decision to hire Oetjen was based solely on the interviews and no other criteria or sources of information, including annual reviews, were utilized.") (citing Docs. [33-6] at 15:13-24, [33-7] at 32:19-33:11).

The panelists claim that when they interviewed Bonomo and made the hiring decision, they were not aware that Bonomo had filed an age-discrimination complaint to Boeing's EEO office in July 2017. Doc. [39] ¶ 67. As in the 2017 interview, no panelist made any age-related statement during the 2018 hiring process. *Id.* ¶ 55. In fact, after selecting Oetjen, Dewees offered to give Bonomo constructive feedback to help him interview better in the future. *Id.* ¶ 68. Bonomo filed no complaint with Boeing's EEO regarding the 2018 hiring process, and he admits that he is unaware of any

4

instances where older Boeing employees had been discriminated against based on age or of any pattern or practice of discrimination against older employees. *Id.* ¶¶ 74, 77, 78. Bonomo retired on January 2, 2020. *Id.* ¶ 76.

On November 4, 2019, Bonomo filed the present action in the Circuit Court of St. Louis County, alleging one count of age discrimination and another count for retaliation under the Missouri Human Rights Act (MHRA), MO. REV. STAT. § 213.010 *et seq*. Doc. [1-1] at 3-4. On December 30, 2019, Boeing removed the case to this Court on the basis of diversity jurisdiction. Doc. [1].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, either party may move for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden to "bring up the fact that the record does not contain" a genuine dispute of material fact "and to identify that part of the record which bears out his assertion." *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Assoc. Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988)). "[I]f the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue." *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

### I.  **Discrimination Claims Under the MHRA**

Under the Missouri Human Rights Act, it is unlawful for an employer to refuse to hire, to discharge, or to otherwise discriminate against an individual because of, among other things, the individual's age. MO. REV. STAT. § 213.055.1(1)(a). An employer discriminates "because of" age when the individual's age was the "motivating factor" in the adverse employment decision, MO. REV. STAT. § 213.010(2), and age is a "motivating factor" when it "actually played a role" and had a "determinative influence" in the decision, MO. REV. STAT. § 213.010(19). That standard requires proof that age was more than a mere contributing factor in the adverse employment decision and is comparable to the standard utilized under federal Title VII. *See*, *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 794-

5

95 (Mo. App. 2018) ("The [motivating factor] standard is analogous to the one used in employment discrimination claims under federal law[.]").

When an employer files a summary judgment motion in an MHRA case involving indirect discrimination, Missouri courts are instructed to apply the burden shifting-framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). MO. REV. STAT. § 213.101.3; *see also Button v. Dakota, Minn. & E. R. R. Corp.*, 963 F.3d 824, 832 n.5 (8th Cir. 2020). Under *McDonnell Douglas*, the plaintiff-employee must first establish a *prima facie* case of discrimination by demonstrating: (1) he is in a protected class; (2) he applied and was qualified for the open position; (3) he was denied the open position; and (4) the employer filled the position with a person not in the same protected class. *Cox v. First Nat'l Bank.*, 792 F.3d 936, 938 (8th Cir. 2015). Once the employee makes his *prima facie* showing, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for denying the promotion. *Id.* at 938-39. If the employer gives such a reason, the burden returns to the employee to produce evidence supporting an inference that the employer's rationale was mere pretext for intentional discrimination. *Id.* at 939. "When reviewing cases under the MHRA, appellate courts are guided by both Missouri law and any federal employment discrimination case law that is consistent with Missouri law." *Lampley v. Mo. Comm'n on Human Rights*, 570 S.W.3d 16, 22 (Mo. banc 2019) (cleaned up) (quoting *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 76 (Mo. App. 2015)).

Boeing does not argue that Bonomo fails to make his *prima facie* case. Doc. [35] at 6. Boeing also provides a nondiscriminatory justification for the hiring decision: Oetjen outperformed Bonomo in the 2018 interview by "[giving] more specifics in his answers in a way that demonstrated the strong communication skills that the hiring panelists wanted for this senior leadership role[.]" Doc. [38] at 7 (quoting Doc. [35] at 6-7). Thus, whether summary judgment is proper turns on whether Bonomo can demonstrate a genuine factual dispute by presenting evidence tending to show that Boeing's stated rationale is mere pretext for age discrimination. Docs. [35] at 5-6, [38] at 8.

"[M]ore substantial evidence of discrimination is required to prove pretext, because evidence of pretext is viewed in the light of [the defendant]'s legitimate, non-discriminatory explanation." *Quinonez-Castellanos v. Performance Contractors, Inc.*, 2017 WL 6519033, at *8 (N.D. Iowa 2017) (quoting *Jones v. United Parcel Serv.*, 461 F.3d 982, 992 (8th Cir. 2006)). There are two primary ways to show pretext: A plaintiff may present evidence that "the proffered reason has 'no basis in fact'" or that "'a [prohibited] reason [is] more likely.'" *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1048 (8th Cir. 2011)). A plaintiff might show pretext by, for example, offering evidence showing that the employer failed to follow applicable policies, treated

6

similarly-situated employees in disparate fashion, or shifted its explanation for the employment decision over time. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015) (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)).

Bonomo makes seven arguments, which the Court will address in turn.

### A. Boeing's alleged failure to follow its own policy is insufficient to defeat summary judgment.

Bonomo argues that Boeing's decision to violate company policy supports an inference of pretext. *See* Doc. [38] at 8 (citing *Russell v. TG Mo. Corp.*, 340 F.3d 735 (8th Cir. 2003)). Specifically, Bonomo asserts that "Boeing has a clear policy in place setting forth a specific and detailed process to be followed in the hiring process," and that "[o]ne aspect of this policy is that a final hearing decision must be based on multiple factors, and cannot be based solely on how the candidates interviewed." *Id.* He cites the Boeing Enterprise Staffing Handbook, which states: "[w]hen making the final hiring decision consider the structured interview rating and job-relevant work history, job-relevant information provided by the candidate, educational, technical knowledge, performance management, corrective action, and other assessments . . . ." Doc. [42] ¶ 2 (citing Doc. [40-1] at 55-56). Thus, Bonomo argues, hiring Oetjen based solely on the interviews violated company policy.

Boeing responds that Bonomo's presentation of the Staffing Handbook is misleading, as "[a]nother hiring policy states that, '[w]hen making a selection decision, the hiring manager is encouraged to consider other factors beyond the structured interview, such as unique skills, education, certification, capabilities, experience [and] approval assessments.'" Doc. [43] at 4-5 (quoting Doc. [33-1] at 72, § 8). Boeing's standardized interview booklets inform hiring managers that "Other factors" may be considered but need not be. *Id.* at 5 (citing Doc. [34-1] at 56). In fact, the same page of the same booklet authorizing the use of "Other factors" contains a check box next to the bolded statement, "No other factors were considered than the structured interview[,]" and invites managers to check the box if the managers relied exclusively on the structured interview. *Id.* (quoting Doc. [34-1] at 56).

Notwithstanding Boeing's counterevidence, reading the record in the light most favorable to Bonomo, a reasonable factfinder could conclude that Boeing violated its own corporate policy in administering the 2018 hiring process. That does not end this Court's inquiry, however. While "an employer's deviation from its own policies can, in some instances, provide evidence of pretext," *Russell*, 340 F.3d at 746, the fact that corporate policies are not followed does not conclusively show that the employer's stated reason is subterfuge for discrimination. *Schaffhauser*, 794 F.3d at 904

("Although an employer's violation of its own policies may be indicative of pretext, that is not always so.") (quoting *Anderson v. Durham D & M, LLC*, 606 F.3d 513, 522 (8th Cir. 2010)). "Because the burden to prove pretext merges with the ultimate burden of persuading the court that the plaintiff was the victim of intentional discrimination, the plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir. 2021) (cleaned up) (quoting *Smith v. URS Corp.*, 803 F.3d 964, 968 (8th Cir. 2015) (quoting *Mathews v. Trilogy Commc'ns, Inc.*, 143 F.3d 1160, 1165 (8th Cir. 1998)). Thus, even assuming that Bonomo's reading of Boeing hiring policy is correct, he still has to provide enough evidence for a reasonable factfinder to find that the hiring decision was motivated by his age. Because he fails to do so, the fact that he has shown a genuine dispute over whether Boeing violated company policy does not save his discrimination claim.

> **B. Boeing's decisions placing younger employees in Level M Flight Ramp positions three times in a span of two years do not show that Boeing's 2018 hiring rationale was pretext for age discrimination.**

Bonomo also argues that other decisions to hire younger workers suggest that Boeing's rationale for not promoting him is pretextual. Doc. [38] at 8 (citing *Wittenburg v. Am. Exp. Fin. Advisors, Inc.*, 464 F.3d 831, 840 (8th Cir. 2006)). He cites three hires into Level M Flight Ramp manager positions, all occurring within two years: (1) the 2017 decision to hire Aaron Boswell to the Flight Ramp, (2) the September 2017 decision to appoint Daniel Oetjen to the interim position, and (3) the December 2018 decision to permanently hire Oetjen to the F-15 Flight Ramp. Doc. [38] at 8-9. According to Bonomo, those three decisions (the latter two made by Dewees, who was no more than 36 years old during the relevant period) evince a pattern and practice of selecting individuals no older than 35 for Level M Flight Ramp manager positions. *Id.* at 9.

First, *Wittenburg* does not help Bonomo. In opposition to summary judgment on her ADEA claim, Wittenburg provided evidence that her employer eliminated eight of the oldest employees in her department at the end of a two-year restructuring and gave four of the five oldest department members low ratings in 2002, setting them up for termination in 2003.[4] *Wittenburg*, 464 F.3d at 837-38. In addition, Wittenburg offered the statement of a corporate decisionmaker arguably expressing

---

[4] The Eighth Circuit disagreed with Wittenburg's characterization of the facts, noting that, of 31 analysts affected by restructurings, only six of the 17 employees who were over 40 were let go, while four of the 14 younger employees were terminated. *Id.* at 837.

8

a preference for younger employees.[5] *Id.* at 837. Even with such evidence, the Eighth Circuit found the terminations insufficient to create a genuine dispute regarding pretext and affirmed the district court's grant of summary judgment. *Wittenburg*, 464 F.3d at 842.

Second, Bonomo cannot rely upon Harig's 2017 decision to hire Boswell as evidence of a pattern and practice of discriminatory hiring, as he concedes that it resulted from a legitimate hiring process. Doc. [38] at 3-4. And even had he not, he offers no evidence that age was a motivating factor in Harig's decision to deny him the position. Without the Boswell hiring, only two purportedly discriminatory hiring decisions have to carry the weight of his pattern and practice argument: (1) the 2017 decision to name Oetjen as the interim manager, and (2) the decision challenged in this case. And Bonomo presents no evidence that his age played a role in either decision. Therefore, his pattern or practice argument fails to demonstrate a genuine dispute of material fact as to pretext.

**C. The subjective features of the structured interview process fail to show that Boeing's hiring rationale was pretext for age discrimination.**

Bonomo argues that Boeing "hired Oetjen . . . based solely on subjective criteria without considering any additional, objective criteria, like annual reviews or disciplinary records," and that the use of such subjective criteria supports an inference of pretext. Doc. [38] at 9.

The use of subjective criteria may support an inference of pretext, but it is not dispositive. *Torgerson*, 643 F.3d at 1050 ("[T]he presence of subjectivity in employee evaluations is itself not a grounds for challenging those evaluations as discriminatory.") (quoting *Wittenburg*, 464 F.3d at 839). "Where the employer does not rely exclusively on subjective criteria, but also on objective criteria and education, the use of subjective considerations does not give rise to an inference of discrimination." *Torgerson*, 643 F.3d at 1049 (citing *Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1080 (8th Cir. 2008)). "If employees are evaluated on an objective performance scale by a uniformly applied process, the subjectivity of some components cannot in and of itself prove pretext or discriminatory intent." *Id.* (citing *Elliot v. Montgomery Ward & Co.*, 967 F.2d 1258, 1262-63 (8th Cir. 1992)). Boeing presents evidence that Oetjen was objectively more qualified because he held a master's degree when Bonomo did not, Doc. [39] ¶¶ 41, 65, and a master's degree was a preferred prerequisite for the 2018 Level M Flight Ramp position, *id.* ¶ 40. But Boeing does admit to having hired Oetjen "solely on the interviews and no other criteria or sources of information." Doc. [42] ¶ 38.

---

[5] A decisionmaker with respect to the 2003 restructuring had stated that the employer was "not averse to hiring younger portfolio managers or analysts and growing them." *Wittenburg*, 464 F.3d at 836-37.

*Torgerson* is instructive. In that case, two plaintiffs who were passed over for a hiring opportunity argued that the employer's use of subjective interviews by both an interview panel and the fire chief supported a genuine dispute regarding discriminatory pretext. *Torgerson*, 643 F.3d at 1049. Much like the interviews in this case, the panel interview in *Torgerson* played a critical role in the hiring decision, constituting 40 percent of the plaintiffs' overall scores. *Id.* at 1050. The Eighth Circuit found no inference of discriminatory motive in the use of the panel interview, noting that each such interview was

> conducted as a uniformly applied process using an objective performance scale and objective criteria. Each panel consisted of an HR interviewer, a Commissioner, and a Fire department representative. The interviewers received a list of HR-prepared questions. A private HR firm instructed them how to ask and score the responses by objective criteria. Each applicant was asked the same questions in the same order by the same interviewer. The applicants received, in advance, the list of ten potential questions, and a written memo from the HR firm identifying the qualities at issue.

*Id.* Similarly, the Boeing structured interview process required that each candidate receive a uniform interview. Doc. [39] ¶ 6. The process required the use of an HR representative or manager who was not the hiring manager. Doc. [33-1] at 70. The structured interview booklet containing the interview protocols mandated that the interviewers follow specific procedures, such as asking each candidate the same job-related questions while permitting job-relevant probing questions to assist candidates in responding. Docs. [33-1] at 71-72, [39] ¶ 8. The booklet also provided a performance scale against which the interviewers were to evaluate the quality of the candidates' answers. Docs. [33-1] at 72, [39] ¶ 9.

The *Torgerson* plaintiffs also argued that the subjective nature of the fire chief's interview supported an inference of discriminatory pretext. *Torgerson*, 643 F.3d at 1050. The chief's interview notes indicated that he found Torgerson "unsophisticated," with "difficulty communicating," and "lack[ing] the characteristics other applicants possessed[.]" *Id.* The Eighth Circuit found that the interviewers were at liberty to draw reasonable comparisons between those interviewed, *see Tyler v. Univ. of Ark.*, 628 F.3d 980, 988 (8th Cir. 2011); *Chambers v. Metro. Prop. & Casu. Ins.*, 351 F.3d 848, 857 (8th Cir. 2003); *Amini v. City of Minn.*, 643 F.3d 1068, 1076 (8th Cir. 2011), and that by providing the above descriptions, "[t]he interviewers here were 'able to explain, in clear and reasonably specific terms, their reasons for scoring [the plaintiffs] lower than the [hired] candidates,'" *Torgerson*, 643 F.3d at 1050 (quoting *Brooks v. Ameren UE*, 345 F.3d 9856, 988 (8th Cir. 2003)).

Dewees, Sears, and Amin likewise provided "clear and reasonably specific" explanations for the scores given to both Bonomo and Oetjen at their 2018 interviews. For example, when asked

10

about implementing new standard safety procedures and processes, Dewees recounted that Bonomo's response discussed the implementation of new fall protection and safety glasses protocols by engaging in "constant hammering" of noncompliant employees, while Oetjen explained how he employed a new Aircraft Hazardous Energy plan that was subsequently replicated in other Boeing departments. Doc. [33-3] ¶¶ 11.a-c. To Dewees, Bonomo's answer showed that Bonomo "saw a place where fall protection was not being used, reported it, and as a result the area was safer," while Oetjen's answer "was stronger because it indicated he did more than just report something: he implemented a new program, it succeeded, and the plan was replicated elsewhere." *Id.* ¶ 11.c. Additionally, Dewees thought that Bonomo's safety glasses response suggested that Bonomo was not suited for upper-management leadership, as "'constant hammering' of subordinates . . . is not a very innovative approach to dealing with a safety issue." *Id.* ¶ 11.d.

Another question inquired about a time where the interviewee had to modify his or her goal for another department's benefit and when the interviewee asked another department to modify its goal to serve the interviewee' department. *Id.* ¶ 12. Bonomo discussed how he generally had to juggle when F-15s and F-18s received a paint job. *Id.* ¶ 12.a. Oetjen discussed a specific instance where the Final Assembly department struggled to meet its schedule and, as a corrective action, developed a plan with the Final Assembly senior manager to resolve the problem and how they executed the plan. *Id.* ¶ 12.b. To Dewees, "Oetjen's answer to this question was better than Bonomo's because it presented specific situations, and discussed his involvement in resolving them." *Id.* ¶ 12.c. Dewees believed that "Bonomo's answer about how there are typically dueling requests to have aircraft painted is not a unique situation or especially difficult conflict" and that "he did not explain what he did in response to any specific, particularly difficult instance of that happening." *Id.*

To defeat summary judgment, Bonomo must produce sufficient evidence from which a reasonable factfinder could infer that Boeing's stated reason was pretextual and that Bonomo's age "actually played a role" and had a "determinative influence" in Boeing's 2018 hiring decision. *Torgerson*, 643 F.3d at 1050 ("To defeat summary judgment, Torgerson and Mundell must produce sufficient evidence from which a reasonable factfinder could infer discrimination.") (quoting *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 473-74 (8th Cir. 2006)); MO. REV. STAT. § 213.010(19). As the Eighth Circuit found with respect to the analogous argument in *Torgerson*, "[i]n this case, a reasonable jury could not infer pretext from the *absence* of evidence." *Torgerson*, 643 F.3d at 1051. Therefore, Bonomo's argument based on the subjectivity of Boeing's procedures fails.

**D. Bonomo fails to show how the structured interview process is so "wholly without merit or obviously contrived" as to render Boeing's hiring rationale mere pretext for age discrimination.**

Next, Bonomo argues that "[c]aselaw supports the conclusion that if a defendant's proffered nondiscriminatory explanation is wholly without merit or obviously contrived it can permit an inference of discrimination." Doc. [38] at 10 (citing *Nelson v. Boatmen's Bancshares*, 26 F.3d 796, 801 (8th Cir. 1994)). According to Bonomo, "[a] reasonable jury could certainly conclude [Boeing's exclusive reliance on the structured interviews] is illogical and contrived, particularly considering Dewees offered no rationale for choosing Oetjen when he initially submitted the Selection Process Results form." *Id.*

"In some cases, evidence that an employer's proffered nondiscriminatory explanation is wholly without merit or obviously contrived might serve double duty; it might serve the additional purpose of permitting an inference that age discrimination was a motivating factor in a plaintiff's termination." *Nelson*, 26 F.3d at 801. In those cases "'*[n]o additional proof of discrimination is required*.'" *Id.* (quoting *Gaworski v. ITT Com. Fin. Corp.*, 17 F.3d 1104, 1110 (8th Cir. 1994)) (emphasis in original). Thus, in some instances, evidence that supports a jury finding of employer pretext will also support a finding that the employer acted with a discriminatory motive. That is not always true, however; there are instances where evidence of pretext gives no insight into the mind of the decisionmaker, and additional evidence of discriminatory motive is necessary. *See id.* at 801 ("But evidence discrediting an employer's nondiscriminatory explanation is not necessarily sufficient (i.e., it is sufficient in some cases but not in all cases) because an age-discrimination plaintiff cannot prevail unless 'the factfinder . . . believe[s] the plaintiff's explanation of intentional discrimination.'") (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519 (1993)); *see also Canning*, 995 F.3d at 612 ("[Plaintiff] must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.") (quoting *Mathews*, 143 F.3d at 1165).

Reviewing a denial of a renewed motion for judgment as a matter of law, the Eighth Circuit decided that *Nelson* was a case in the former category. In a posture of deference to the jury verdict, the Eighth Circuit concluded that "a jury could reasonably have found that Boatmen's had a discriminatory animus based upon Nelson's age," *id.* at 801-02, because Nelson offered evidence that his manager had acted inconsistently. Specifically, the evidence showed that, even though Nelson's supervisor stated that he would receive an opportunity to correct work deficiencies, the supervisor had already decided nearly six months prior that Nelson should be terminated. *Id.* at 802. Nelson

12

also presented conflicting testimony of two Boatmen's managers. One manager testified that he relied on a telephone survey of outside brokers to determine that Nelson was floundering, while a director of human resources testified that after many discussions with the manager, Nelson's performance was never considered in the termination decision. *Id.* The Eighth Circuit stated that while "evidence disproving Boatmen's proffered explanation is not necessarily sufficient," the evidence in this case is "strong enough, and Boatmen's case has been rendered weak enough, that the record as a whole [was] sufficient to support an inference that Boatmen's fired Nelson with a discriminatory age-related animus." *Id.*

Unlike Nelson, Bonomo presents no evidence that Boeing's explanation of the hiring decision was "wholly without merit," and Boeing has provided ample support for its claim that the panelists believed that Bonomo showed weaker leadership qualities than Oetjen. *See, e.g.,* Docs. [39] ¶¶ 48-54, [33-3] ¶¶ 6-11, 12, 14, 17, [33-15] ¶¶ 8-10. Because Bonomo presents no affirmative evidence showing that Boeing's explanation was illogical or unfounded in fact, he has not shown that Boeing's explanation was a pretext for discrimination. *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir. 1988) ("Even if these subjective reasons could be rejected on credibility grounds, such a rejection of that evidence would not add anything to the lack of a showing of pretext by [plaintiff].").

### E. Dewees's decision to hand-pick the 2018 hiring panelists fails to give rise to an inference that Boeing's hiring decision was motivated by Bonomo's age.

Bonomo also argues that Boeing's offered motive is pretextual because "Dewees handpicked the hiring committee with two people he knew well: Amy Amin and Mark Sears," and that "stacking an interview panel or hiring committee can be an indicator of pretext." Doc. [38] at 10 (citing *McKay v. U.S. Dept. of Trans.*, 340 F.3d 695, 700 (8th Cir. 2003)).

In *McKay*, the Eighth Circuit discussed various ways to show pretext, including stacking an interview panel with people inclined to favor a certain candidate. Upholding the district court's grant of summary judgment for the employer, the Court stated that, "McKay presented no evidence supporting his assertion that Thomson violated FAA practice or procedure in filling the vacancy, stacked the interview panel in [the younger candidate's] favor, and instructed Seppala to hire [the younger candidate]." *McKay*, 340 F.3d at 700. Similarly, in this case, Bonomo presents no evidence that Dewees stacked the hiring panel in Oetjen's favor. *McKay* does not support the notion that selecting younger interviewers he knew well for a hiring panel necessarily gives rise to an inference that the employer acted with a discriminatory motive. And to scrutinize the decision to select well-acquainted employees for a hiring panel would invite the judiciary to act as a kind of "super personnel

13

department reviewing the wisdom or fairness" of an employer's business judgments. *Cronquist v. City of Minn.*, 237 F.3d 920, 928 (8th Cir. 2001).

Bonomo's case closely parallels the facts of *McKay*. In *McKay*, the plaintiff was unable to demonstrate pretext after the employer presented affidavits that "stated that the interview panel unanimously favored Orr over McKay, and that the decisionmaker Seppala selected Orr because of her superior communication skills evidenced in an interview process in which all three applicants were treated equally." *McKay*, 340 F.3d at 700. The interview process in *McKay*, and the stated rationales for selecting Orr, are similar to the undisputed facts here. The panelists unanimously chose Orr because "'[h]er communication skills and responses to the questions during the interview were better than the other applicants,'" while McKay gave short answers, failed to volunteer additional information, and did not openly communicate with the panel members during the interview. *Id.* at 687. Here, the 2018 panelists unanimously considered Oetjen to be the most qualified candidate because he gave more detailed answers and better reflected the talents and communication skills necessary to perform a leadership role. Doc. [39] ¶¶ 48-54. The Eighth Circuit noted that while McKay presented evidence that he was qualified for the position, "Seppala and the other panel members presented unrefuted evidence that they rated other criteria more highly." *McKay*, 340 F.3d at 700. The same is true here. Doc. [39] ¶¶ 48-54. Thus, neither the evidence relating to committee selection nor the *McKay* case generally provides any support for Bonomo's pretext argument.

### F. Bonomo establishes no genuine factual dispute regarding Oetjen's relative qualifications for the 2018 opening.

Bonomo contends that he was more qualified for the Level M Flight Ramp position than Oetjen, citing case law suggesting that "hiring a less qualified applicant can be an indicator of pretext." Doc. [38] at 10 (citing *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 796 (8th Cir. 2019)).

"It is 'common business practice to pick the best qualified candidate for promotion. When that is not done, a reasonable inference arises that the employment decision was based on something other than the relative qualifications of the applicant.'" *Cox.*, 792 F.3d at 939 (quoting *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1129 (8th Cir. 1998)). "To support a finding of pretext, the applicant must show that the employer hired a *less* qualified applicant." *Id.* (quoting *Torgerson*, 643 F.3d at 1049) (emphasis in original) (cleaned up). "'If the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate, then no inference of discrimination would arise.'" *Id.* (quoting *Torgerson*, 643 F.3d at 1049); *see also Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995) ("Although [an employee] does possess the experience and some of the other qualities

14

essential for success in the position, it does not suffice to raise an inference that [the employer's] stated rationale for giving the position to another is pretextual."); *Pierce*, 859 F.2d at 604 ("The mere existence of comparable qualities between two applicants . . . alone does not raise an inference of . . . discrimination."). It is the employer's prerogative to identify those traits and attributes that define the best candidate. *Cox.*, 792 F.3d at 939 (quoting *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007)).

Bonomo presents no evidence that Oetjen failed to meet the 2018 position's requirements, or that Oetjen's qualifications were notably inferior to Bonomo's. Instead, Bonomo rests his "lack-of-qualification" argument on the tenuous claim that, because Oetjen was apparently unqualified for the 2017 opening, he was necessarily unqualified for the 2018 position, as both positions had the same prerequisites. Doc. [38] at 10. Even if there is a case to be made that Oetjen did not meet the qualifications for the 2017 opening,[6] that does not entail that Oetjen was unqualified for a later posting, even if both job postings listed the same requirements. Thus Bonomo makes no showing that Oetjen was unqualified—or even less qualified than Bonomo—for his 2018 promotion.

### G. Dewees's delayed explanation to HR fails to show discriminatory pretext.

In his final argument for pretext, Bonomo asserts that Dewees's failure to immediately indicate the hiring rationale on the Selection Process Results Form supports an inference that the hiring decision was discriminatory. Doc. [38] at 11. That argument also fails. Dewees's failure to fill in the hiring rationale portion on the Selection Process Results Form and his belated email submission provide no support for an inference that the panel's hiring decision was motived by age discrimination. Bonomo "cannot prevail in this lawsuit by showing sloppy management," *Noreen v. PharMerica Corp.*, 833 F.3d 988, 995 (8th Cir. 2016), and the tardiness of Dewees's response does not hint at an attempt to "conceal a discriminatory motive." Doc. [38] at 11. Dewees's answer simply repeats the same rationale that the panelists had already given: Oetjen was the best candidate because "his responses were articulate relative to the position and demonstrated a higher level of skill, ability and competency compared to the other candidates during the interview." *Compare* Doc. [40-9] at 1, *with* Doc. [39]

---

[6] The parties dispute whether the 2017 panelists decision to decline giving Oetjen an interview because of Oetjen's Tooling Center New Hire Screening Worksheet score shows that Oetjen was unqualified for the 2017 position. Docs. [38] at 3, 10, [42] ¶ 12, [43] at 12. It is not necessary for the Court to decide whether that dispute is genuine, as the fact is not material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (material facts are those that "might affect the outcome of the suit under the governing law").

¶¶ 48-54. The timing of Dewees's submission does not create a genuine dispute as to whether that rationale was pretextual.

## II. Retaliation Claims Under the MHRA

Under the MHRA, an employer may not "retaliate or discriminate in any manner against any other person because such person has opposed any practice" prohibited by the MHRA or "has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to" the MHRA. MO. REV. STAT. § 213.070.1(2). To make a *prima facie* MHRA retaliation claim, the plaintiff must establish that: (1) he complained of discrimination, (2) the employer took an adverse action, and (3) a causal relationship existed between the complaint and the adverse action." *Holmes v. Kansas City Pub. Sch. Dist.*, 571 S.W.3d 602, 611 (Mo. App. 2018) (citing *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 48 (Mo. App. 2016)). Like discrimination claims under the MHRA, causation for a retaliation claim requires the plaintiff to demonstrate that his protected activity was a "motivating factor," meaning that his "protected classification actually played a role . . . and had a determinative influence" on the adverse action. MO. REV. STAT. §§ 213.010(2), (19).

Boeing contends that there is no genuine dispute of material fact as to the third element of Bonomo's *prima facie* case, i.e., causation. Because there is no evidence that the 2018 panelists were aware of Bonomo's 2017 EEO complaint, their hiring decision could not have been motivated by it. Doc. [35] at 14.

It is undisputed that the 2018 panelists had no knowledge of Bonomo's 2017 EEO complaint before Bonomo's 2018 interview.[7] Doc. [39] ¶ 67. To prevent summary judgment, Bonomo must present sufficient evidence for a reasonable jury to find that Bonomo's 2017 EEO complaint played an actual role and had a determinative influence in the 2018 hiring decision. MO. REV. STAT. §§ 213.010(2), (19). Bonomo offers no evidence regarding causation and relies exclusively upon the same pretext arguments he made to defend against summary judgment with respect to his age discrimination claim. Doc. [38] at 13. That is inadequate. Because Boeing offers evidence negating a causal connection between Bonomo's EEO complaint and the 2018 hiring decision, Doc. [39] ¶ 67, and

---

[7] To the extent Bonomo attempts to generate a genuine dispute, his attempt fails because he gives no citation to the record and instead cites generally to his Memorandum in Support. Doc. [39] ¶ 67; Fed. R. Civ. P. 56(1)(A); E.D. Mo. L.R. 4.01(E) ("All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by opposing party.").

Bonomo offers no evidence of a genuine dispute, Doc. [38] at 13, Bonomo fails to make his *prima facie* showing.

## CONCLUSION

Bonomo fails to provide sufficient evidence to create a genuine dispute of material fact as to the sincerity of Boeing's professed hiring rationale; therefore, Boeing is entitled to judgment as a matter of law on his Title VII discrimination claim. Bonomo also fails to provide evidence of causation and thus does not make a *prima facie* case for retaliation under the MHRA.

Accordingly,

**IT IS HEREBY ORDERED** that Boeing's Motion for Summary Judgment, Doc. [32], is **GRANTED**.

A separate Order of Judgment will accompany this Memorandum and Order.

**To seek sealing of any part of this Order, a party must file a motion pursuant to Local Rule 13.05 within 14 days after the entry of this Order.**

Dated this 25th day of February, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE